UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB E. BALCOM,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 20-12660 |
| v. | | Robert H. Cleland<br>United States District Judge |
| COMMISSIONER OF<br>SOCIAL SECURITY, | | David R. Grand<br>United States Magistrate Judge |
| | Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 20)**

Plaintiff Jacob Balcom ("Balcom") brings this action pursuant to 42 U.S.C. §

405(g), challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying his application for Supplemental Security Income ("SSI")

under the Social Security Act (the "Act"). Both parties have filed summary judgment

motions (ECF Nos. 17, 20), which have been referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's

("ALJ") conclusion that Balcom is not disabled under the Act is not supported by

substantial evidence. Thus, the Court **RECOMMENDS** that the Commissioner's Motion

for Summary Judgment **(ECF No. 20)** be **DENIED**, Balcom's Motion for Summary

Judgment **(ECF No. 17)** be **GRANTED IN PART** to the extent it seeks remand and

**DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Background

Balcom was 21 years old at the time of his application date of December 6, 2017, and at 5'6" tall weighed approximately 125 pounds during the relevant time period. (PageID.99, 140, 155).[1]  He graduated from high school but had no further education and has never worked.  (PageID.34, 115-16).  He alleges disability primarily as a result of severe social anxiety, panic disorder with agoraphobia, depression, and obsessive-compulsive disorder.  (PageID.52, 104, 155).

After Balcom's application for SSI was denied at the initial level on May 16, 2018 (Tr. 68-72), he timely requested an administrative hearing, which was held on October 2, 2019, before ALJ John Dodson (Tr. 32-50).  Balcom, who was represented by non-attorney representative Denise Kamisar, testified at the hearing, as did vocational expert ("VE") Michele Robb.  (*Id.*).  On October 30, 2019, the ALJ issued a written decision finding that Balcom is not disabled under the Act.  (Tr. 18-26).  On July 31, 2020, the Appeals Council denied review.  (Tr. 1-6).  Balcom timely filed for judicial review of the final decision on September 29, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Balcom's

---

[1] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 14.

2

medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the

claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Balcom is not disabled under the Act. At Step One, the ALJ found that Balcom has not engaged in substantial gainful activity since December 6, 2017 (the application date). (Tr. 20). At Step Two, the ALJ found that he has the severe impairments of panic disorder with agoraphobia and social anxiety, and depressive disorder. (*Id.*). At Step Three, the ALJ found that Balcom's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Balcom's residual functional capacity ("RFC"), concluding that he is capable of performing the full range of work at all exertional levels, but with the following nonexertional limitations: unskilled work involving simple, routine, repetitive tasks and no work with the public. (Tr. 22).

At Step Four, the ALJ found that Balcom has no past relevant work. (Tr. 25). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Balcom is capable of performing the jobs of packer (120,000

4

jobs nationally), cleaner (480,000 jobs), and assembler (280,000 jobs).  (Tr. 25-26).  As a result, the ALJ concluded that Balcom is not disabled under the Act.  (Tr. 26).

###    C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the

administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th

Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal quotations omitted).  If

the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human

Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.   Analysis**

In his motion, Balcom argues that the ALJ erred in weighing the three medical

opinions of record.[2]  (ECF No. 17, PageID.452-60).  For the reasons set forth below, the

Court agrees and finds that remand is warranted.

*1.   Disability Reports, Hearing Testimony, and Other Records*

In a January 29, 2018 function report, Balcom indicated that he cannot leave his

house – and much of the time does not even leave his room – due to his extreme anxiety

and panic attacks.  (PageID.233, 236).  His activities are limited, and he is "very tired and

fatigued," sleeping many hours during the day.  (PageID.234).  Balcom further indicated

that he often remains in the same clothes for days and only showers when he has to leave

the house for a medical appointment.  (*Id.*).  His mother needs to remind him to shower,

---

[2] Balcom also asserts that the ALJ erred in evaluating his subjective complaints and in considering whether his impairments meet or medically equal Listing 12.06.  (PageID.460-66).  Because the Court is recommending remand on other grounds, it need not consider the merits of these arguments in detail.  On remand, however, the ALJ should ensure that proper attention is given to both of these issues.

and she prepares his meals for him. (PageID.235). He does not do any household chores or shopping. (PageID.235-36). He has difficulty focusing and concentrating, and can never seem to complete a task. (PageID.238). He cannot drink out of glasses or cups or use silverware that other people have used; must have his own utensils; cannot use restrooms other than his own; and cannot eat around others. (PageID.239).

In a letter dated August 7, 2018, Balcom's mother further explained:

> Jacob spends the majority of the day sleeping. He rarely leaves his room. He does not leave the house, unless we have an appointment, and even that is a struggle. I frequently need to reschedule appointments because of his difficulty leaving the house. When I am able to get him to go to his appointments, I tell him the appointment is at least an hour earlier than its actual time, since it is always a challenge getting him out of the door. He finds reason after reason to not leave on time, even when starting to prepare hours ahead of time. Prior to attending any appointment, whether dental, medical or his psychiatrist, he will quiz me before and on the way about how many people will be in the waiting room and he will fret about it to an extreme.

> Jacob won't eat in front of anyone. I prepare most of his meals and even that is a challenge. I cannot talk when preparing the meals, and if I do, I have to step away from the food, or he will not eat it. I cannot use regular spoons or forks while preparing or serving food. I have to use utensils that have not ever been used by anyone for eating. He keeps a separate set of silverware, that is not allowed to go in the dishwasher, and not to be used by anyone else. If one of his utensils comes in contact with any dishes used by others, he throws it out. Frequently, he'll question the safety of any food to the extreme. He will not drink water from the faucet, even with the purifier attached. He will only drink a certain type of bottled water, and even that is a concern to him. When he has an idea or concern about something, he will obsess and obsess to the point of exhaustion. And on the opposite extreme, he cannot focus on anything long enough to complete a task and abandons almost everything he starts. He does not do any household chores. He does not like to touch anything someone else has touched.

(PageID.261).

At the October 2, 2019 administrative hearing, Balcom testified that he did not have a driver's license and has never had one. (PageID.99-100). He had problems during driver's education and was afraid he was going to have an anxiety episode in front of the instructor or while driving, so he did not want to obtain his driver's license. (*Id.*). He described his anxiety as feeling like he is falling forward, saying "you could describe it as a blackout … to where I lose sense of control for a moment[,]" accompanied by an extreme form of blushing, sweating, and a racing heart racing. (PageID.100-01). Balcom testified that he does not have a regular schedule, that he is often very tired and naps during the day, and that it is hard for him to focus. (PageID.102). He stays in his room all day and does not engage in conversation with his parents. (PageID.103). He brings meals to his room, does not help clean the house, and does not go grocery shopping. (PageID.104-05). Balcom further testified that, for a long time, he would not see doctors because he was afraid of the panic attacks that would result; now, however, doctor's appointments are the only things for which he leaves his house. (PageID.105-06).

## 2.   *The Relevant Medical Evidence*

At a December 2017 visit to his pediatrician's office for an unrelated issue, the doctor noted that Balcom was "exceedingly anxious" about the appointment. (PageID.331). On examination, he was tremulous at times and difficult to engage in conversation, with a flat affect, and was could not easily be redirected away from his stated concerns. (PageID.331-32). The physician noted that it was his first contact with Balcom, but he suspected Balcom had an anxiety disorder that was "significant enough to limit

leaving home for social and school engagements." (PageID.332).  He further observed: "I am concerned that patient's anxiety is further exacerbating his symptoms which are consuming significant portions of his time and focus with hours spent researching the above condition.  Further, patient currently is not working or going to school, which I am further worried is due to untreated anxiety." (*Id.*).

On January 25, 2018, Balcom saw Dorit Ben-Ami, M.D., reporting anxiety since seventh grade, as well as major depression.  (PageID.366).  He had lost all of his friends, could not maintain any social or academic activity, would isolate and stay in his room, and was reliant on his parents for financial support, grocery shopping, driving him places, and household chores. (*Id.*).  Balcom reported that he started experiencing panic episodes when in driver's education in tenth grade, feeling like he was going to pass out.  He stays in his room and does not socialize with his parents or watch television.  (PageID.367).  On examination, his affect was constricted, blunted, serious, and congruently depressed.  He did not smile.  (PageID.368).  His judgment was impaired by profound depression and social anxiety.  His diagnoses included severe major depressive disorder, agoraphobia with panic disorder, social phobia, mood disorder with depressive features, and generalized anxiety disorder.  (PageID.368-69).  Balcom was prescribed Pristiq and Effexor, and psychotherapy was recommended.  (PageID.369).  Dr. Ben-Ami then wrote: "Jacob is 100% disabled, and has been incapacitated for most of his teen years and young adulthood. He is unable to be gainfully employed and is completely dependent on his parents' physical and financial support, including instrumental activities of daily living.  He currently is unable to attend vocational rehabilitation, due to the severity of his depressive symptoms

9

and panic.  I believe he qualifies for social security disability and would support his application."  (*Id.*).

On February 1, 2018, Balcom saw therapist Miriam Shumulinskiy, M.A., reporting symptoms consistent with major depression and social anxiety, as well as obsessive thoughts, compulsions, and rituals.  (PageID.370).

On April 27, 2018, Balcom attended a consultative psychological examination with Jocelyn Markowicz, Ph.D.,[3] who noted that his mood was mildly anxious and he struggled with social phobia.  According to Dr. Markowicz, Balcom was able to prepare his own meals, did his own laundry, and denied problems taking care of his grooming and hygiene needs.  (PageID.376).  Dr. Markowicz diagnosed Balcom with social phobia and opined that he is "impaired in his ability to work effectively with supervisors or coworkers. (PageID.375-79).

On May 15, 2018, state agency psychologist Bruce Douglass, Ph.D. reviewed Balcom's records and opined that he has moderate limitations in his ability to interact with others and in maintaining concentration, persistence, or pace.  (PageID.121).  In the mental residual functional capacity assessment, Dr. Douglass noted that Balcom is moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule,

---

[3] Dr. Markowicz said that she reviewed Balcom's "January 2018 psychiatric evaluation" but also indicated, somewhat inexplicably, that the records she reviewed "did not feature specific diagnoses."  (PageID.375).  As set forth above, Dr. Ben-Ami diagnosed Balcom in January 2018 with severe major depressive disorder, agoraphobia with panic disorder, social phobia, mood disorder with depressive features, and generalized anxiety disorder.  (PageID.368-69).

maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (PageID.123-24).  Dr. Douglass concluded that Balcom retains the capacity to perform simple, routine tasks on a sustained basis, but further stated: "Social functioning is restricted, and he might not work well with the public, due to social anxiety.  He will work best alone or in small, familiar groups." (PageID.124).

On July 12, 2018, Balcom returned to Dr. Ben-Ami with severe depressive symptoms, overwhelming anxiety, panic, irritability, impaired concentration, insomnia, and an inability to function at home or outside the house.  (PageID.381).  He had been feeling demoralized and hopeless and quit psychotherapy after one session.  (*Id.*).  He took Pristiq for a few weeks, did not notice any change, and stopped.  (*Id.*).  His GAD-7 was 21/21, indicating severe anxiety, and his PHQ-9 was 20/27, showing severe depression. (*Id.*).  He rated his mood and functional level at 10%.  (*Id.*).  On examination, his affect was constricted, blunted, serious, and congruently depressed.  (PageID.382).  His medications were changed to Seroquel and Prazosin.  (*Id.*).

On September 16, 2018, Dr. Ben-Ami completed a medical source statement, opining that Balcom suffers from severe major depressive disorder, post-traumatic stress

disorder (stemming from multiple childhood surgeries), panic disorder, depression due to medical conditions, and social phobia. (PageID.384). When asked to identify Balcom's signs and symptoms, Dr. Ben-Ami checked: poor memory, sleep disturbance, personality change, mood disturbance, emotional lability, difficulty concentrating or thinking, recurrent panic attacks, anhedonia or pervasive loss of interests, psychomotor retardation, feelings of worthlessness, pathological passivity, oddities of speech, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, and generalized persistent anxiety. (*Id.*). She opined that Balcom's impairments would cause him to be absent from work more than three times a month. (*Id.*). Dr. Ben-Ami further indicated that Balcom has no useful ability to function in the following areas: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; carry out detailed instructions; deal with the stress of semiskilled and skilled work; interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. (PageID.385-86). She opined that he has a marked limitation in the ability to understand, remember or apply information and extreme limitations in the ability to interact with

others; concentrate, persist, and maintain pace; and adapt or manage himself in the workplace.  (PageID.386).

On January 29, 2019, Dr. Ben-Ami documented ongoing isolation, depression, and social anxiety and again changed his medications (this time to Ritalin and amitriptyline) because Seroquel and Prazosin were causing excessive sedation.  (PageID.387-88). Balcom reported having attended his cousin's wedding in August 2018 and indicated that he "gets panicky when he does not have an exit from a situation and feels trapped, such as in social events like a wedding.  He starts blushing and feels that everyone sees how anxious he is and would judge him for it."  (PageID.387).

Balcom then saw Bryan Weinstein, M.D. in July 2019 for fainting spells with blushing, panic attacks, and social anxiety.  (PageID.430).  A mental status examination confirmed panic disorder and social anxiety, and the prognosis was guarded.  Lexapro, Holy Basil, and trazodone were prescribed.  (PageID.430-34).  In August and September 2019, Balcom saw Donald Booth, LMSW for symptoms of agoraphobia with panic disorder.  (PageID.435).   Mr. Booth documented Balcom's problems with anxiety, excessive blushing, worry, motor tension, difficulty concentrating, racing thoughts, persistent and unreasonable fears of specific situations, and isolation, as well as the fact that he had no close friends.  (PageID.436).  His current problems were rated at 8-9/10. (PageID.437).

3.    *The ALJ's Evaluation of the Medical Evidence*

Because Balcom's application for SSI was filed after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c.  This regulation provides

that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, an ALJ will articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important of these factors, and the ALJ must specifically explain his consideration of them. *See* 20 C.F.R. § 416.920c(b)(2), (3).

The ALJ considered Dr. Ben-Ami's September 2018 opinion that Balcom has "no useful ability to function" in numerous work-related areas, including maintaining regular attendance; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal work stress; interacting appropriately with the general public; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness. (PageID.87, 385-86). The ALJ also considered Dr. Ben-Ami's opinion that Balcom has a marked limitation in the ability to understand, remember or apply information, and extreme limitations in the ability to interact with others; concentrate, persist, and maintain pace; and adapt or manage himself in the

14

workplace.  (PageID.87, 386).

The ALJ first found Dr. Ben-Ami's opinion "not persuasive" because he believed it was based primarily on Balcom's subjective complaints and was inconsistent with his "limited treatment history as a whole and the primarily normal longitudinal objective findings[.]"  (PageID.87).  As set forth above, however, Dr. Ben-Ami's opinions were based not just on statements made by Balcom to his providers, but on objective observations made at various appointments.  For example, at a January 2018 visit, Dr. Ben-Ami completed an extensive background interview of Balcom, but then further noted that, on examination, his affect appeared constricted, blunted, serious, and congruently depressed.  (PageID.369).  He did not smile, and his judgment was impaired by "profound depression and social anxiety."  (*Id.*).  Dr. Ben-Ami then wrote: "Jacob is 100% disabled, and has been incapacitated for most of his teen years and young adulthood.  He is unable to be gainfully employed and is completely dependent on his parents' physical and financial support, including instrumental activities of daily living.  He currently is unable to attend vocational rehabilitation, due to the severity of his depressive symptoms and panic."  (PageID.369).  This aspect of Dr. Ben-Ami's opinion, then, is clearly based not just on Balcom's subjective reports, but also on the psychiatrist's own professional observations.  At a subsequent examination, Dr. Ben-Ami adjusted Balcom's medications,[4] noted self-reports of high levels of depression and anxiety, and, on examination, noted that

---

[4] Indeed, the "limited treatment history" referenced by the ALJ (PageID.87) contains multiple medication adjustments, whether due to ongoing anxiety, side effects, or simple inefficacy (PageID.369, 381, 388, 430).

Balcom's affect was again constricted, blunted, serious, and congruently depressed. (PageID.382). Similarly, on a medical source statement, Dr. Ben-Ami indicated that Balcom had a mood disturbance, was socially withdrawn, and had a blunt or inappropriate affect, all of which were "psychiatric signs" within the meaning of the applicable social security regulations. (PageID.384). *See* 20 C.F.R. § 416.902(l) ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormality of behavior, mood, thought, memory, orientation, development, or perception. They must be shown by medically observable facts and can be medically described and evaluated.").[5]

As to Balcom's limited treatment history, "[i]n general, it is appropriate for the ALJ to consider a claimant's treatment (other than medication) in evaluating his or her symptoms and pain … and a claimant must follow *prescribed* treatment in order to obtain benefits absent good reason." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (emphasis in original). But, Social Security Ruling ("SSR") 16-3p strongly suggests that "a claimant should be allowed to explain his or her reasons for not pursuing certain treatment options." *Id.* Indeed, SSR 16-3p provides that an ALJ "will not find an individual's symptoms inconsistent with the evidence … without considering possible

---

[5] Case law further confirms the validity of such psychiatric observations in the social security context. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.") (internal citations and quotations omitted).

reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *9 (Oct. 25, 2017).

Here, the record indicates that Balcom suffers from significant social phobia, as well as panic disorder with agoraphobia. Consistent with the very nature of those serious diseases, he does not leave his room, and does not socialize with friends or, to any appreciable extent, even his parents. He does not drive. His appearance at doctors' visits confirms high levels of anxiety. (PageID.332, 337, 367-69, 382, 434). Balcom's mother indicated that Dr. Ben-Ami was one of the "very few people Jacob trusted and would actually agree to eventually see[,]" but she moved out of state so he could no longer see her. (PageID.71, 260-61). Balcom's mother also explained how even getting her son to leave the house for appointments is a challenge, and she often has to cancel and reschedule them.[6] In one record, it was noted that Balcom felt demoralized and hopeless and, thus, quit psychotherapy. (PageID.381). Balcom told Dr. Ben-Ami that he went and talked to a therapist at Perspectives in Troy for two or three sessions "but felt she did not understand at all what was going on with him, so he discontinued the therapy." (PageID.367). The Sixth Circuit has cautioned against drawing conclusions from an individual's failure to seek consistent mental health treatment because the same symptoms that would prevent them from doing so would also prevent them from working on a sustained basis. *See*

---

[6] Indeed, Balcom's mother indicated that Balcom's "not having more extensive outpatient treatment is mostly a result of his not being willing to leave the house for fear of dealing with people, along with his distrust that anyone can actually help him with his condition and limitations. It was a challenge to even get him to go to the hearing." (PageID.71-72).

*Springer v. Comm'r of Soc. Sec.*, 451 F. Supp. 3d 744, 763 (E.D. Mich. 2020) ("It certainly is possible that a claimant's failure to seek or continue mental health treatment could be a symptom of the claimant's anxiety rather than an indication that the claimant's anxiety is not severe."); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."). Here, if the ALJ intended to draw negative inferences from Balcom's lack of consistent mental health treatment, he was required to consider any possible reasons for such and explain his conclusion on his decision, which he failed to do. Thus, as set forth above, the reasons articulated by the ALJ for rejecting Dr. Ben-Ami's opinions are not supported by substantial evidence.[7]

---

[7] Elsewhere, the ALJ discounted Balcom's subjective complaints because he attended one wedding, finding this contrary to his statement that he could not leave the house, and because he purportedly attended to his own grooming, meal preparation, and laundry. (PageID.87, 88). These observations, however, were not meaningfully weighed against the significant competing evidence. There is no indication that the wedding Balcom attended in August 2018 was a pleasant social outing for him, let alone one indicative of Balcom being able to engage in employment; indeed, Balcom described this event to Dr. Ben-Ami as distressing, indicating that it caused him to realize he "gets panicky when he does not have an exit from a situation and feels trapped, such as in social events like a wedding. He starts blushing and feels that everyone sees how anxious he is and would judge him for it." (PageID.387). Moreover, as discussed herein, *see supra* at 8-13, the overwhelming evidence in the record suggests this one event was an outlier in terms of Balcom's ability to overcome his agoraphobia and other impairments. While this Court does not re-weigh the evidence, it does review it to ensure compliance with the substantial evidence standard. The ALJ's brief references to the wedding and daily activities, without evaluating them in context and against the wealth of evidence suggesting they tell only a small fraction of the story, does not satisfy that standard. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its

With respect to the opinion of the consultative examiner, the ALJ acknowledged Dr. Markowicz's opinion that Balcom is "impaired in his ability to work effectively with supervisors and co-workers" but found this opinion only "minimally persuasive" because it was "vague" in that it did not "specify the degree of functional limitation in vocational terms." (PageID.88).  Being unable "to work effectively with supervisors and co-workers" is clear enough, particularly in light of Balcom's diagnoses and mental impairments, to meaningfully convey Dr. Markowicz's opinion about Balcom's serious vocational limitations.  To that end, there is ample support in the record for Dr. Markowicz's opinion that Balcom would have difficulty working with others.  For example, at the consultative examination, Balcom reported having no friends.  (PageID.376).  He was noted to struggle with social anxiety and have a deficit in his ability to work effectively with supervisors and coworkers.  (PageID.378).  In reaching her conclusion, Dr. Markowicz reviewed Balcom's functional report, as well as Dr. Ben-Ami's January 2018 psychiatric evaluation, both of which provide additional support for a finding of substantial social deficits.[8]

Moreover, when Dr. Douglass reviewed Balcom's records, he found Balcom moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, as well as in the ability to maintain socially appropriate

---

weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

[8] Additionally, Balcom's anxiety was significant enough to limit his ability to leave the house for social and work engagements (PageID.332); he did not socialize with his parents (PageID.367); he was difficult to redirect on examination, with nervous affect and decreased eye contact (PageID.339, 349, 368-69, 434); and he was not able to maintain any social or academic activity (PageID.336, 436).  Thus, the evidence is consistent with the social deficits found by Dr. Markewicz.  *See* 20 C.F.R. § 416.920c(b)(3).

behavior and adhere to basic standards of neatness and cleanliness. (PageID.124). Dr. Douglass concurred that "social functioning is restricted, and [Balcom] might not work well with the public, due to social anxiety. He will work best alone, or in small, familiar groups." (*Id.*). Despite finding Dr. Markowicz's opinion "persuasive" (PageID.88), the ALJ failed to incorporate into the RFC any limitations on social interaction, save for a restriction that Balcom not be required to work with the public (PageID.85). Where the ALJ's ultimate RFC finding so conflicts with the credited opinion of a medical source, he must explain why the particular aspect of the medical opinion was not adopted. *See Redd v. Comm'r of Soc. Sec.*, No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) (remand is required "to allow the ALJ to explain why he found [the doctor's] opinions persuasive but failed to include her limitations or to explain how the RFC accommodated those limitations"). Here, the ALJ failed to do just that, warranting remand.

In short, the foregoing makes clear that the ALJ's evaluation of the medical opinion evidence is not supported by substantial evidence, and is not the product of an even and thorough weighing of the competing evidence in the record. *See Trudell*, 130 F. Supp. 2d at 895 ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner*, 745 F.2d at 388 (6th Cir. 1984)). As such, remand is warranted.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's

Motion for Summary Judgment **(ECF No. 20)** be **DENIED**, Balcom's Motion for Summary Judgment **(ECF No. 17)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: January 21, 2022                              s/David R. Grand
Ann Arbor, Michigan                                 DAVID R. GRAND
                                                    United States Magistrate Judge

### REVIEW

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Cleland:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file

21

a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 21, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager